UNITED STATES, Appellee,

v.

Private First Class Andrew R. REEVES,
U.S. Army, Appellant.

No. 49,461.
CM 443401.

U.S. Court of Military Appeals.

July 22, 1985.

For Appellant: *Captain Bernard P. Ingold* (argued); *Lieutenant Colonel Arthur L. Hunt, Captain Thomas J. Feeney, Captain Guy J. Ferrante* (on brief).

For Appellee: *Captain Frederick A. Johnson* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Larry D. Williams* (on brief); *Captain Leonard L. Lucey* and *Captain Thomas E. Booth.*

*Opinion*

EVERETT, Chief Judge:

Appellant was tried at Fort Lewis, Washington, by a general court-martial composed of officer members. Contrary to his pleas, he was convicted of wrongful possession, introduction, transfer, and attempted sale of marihuana, in violation of Articles 134 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 880, respectively. His sentence to a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to Private E-1 was approved by the convening authority; and the United States Army Court of Military Review, 17 M.J. 832, affirmed the findings and sentence except for confinement in excess of 4 years. Appellant's motion for reconsideration was denied, whereupon he petitioned to this Court. We granted review on this issue:

WHETHER THE MILITARY JUDGE AND THE ARMY COURT OF MILITARY REVIEW ERRED IN FAILING TO FIND THAT THE APPELLANT'S STATEMENT TO CPT KOZAK WAS INADMISSIBLE BECAUSE [IT WAS] DERIVED IN VIOLATION OF HIS FIFTH (SIC) AMENDMENT RIGHT TO COUNSEL.

## I

As a result of information he had received about a drug transaction, Special Agent Joe Vanney of the Army Criminal Investigation Division contacted appellant's company commander, Captain Gerard Kozak, and asked "if he had ... a caucasian male" named Reeves in his unit. Upon receiving an affirmative answer, Vanney requested Kozak to help locate appellant, so that he could be apprehended. Kozak responded "that Reeves had just returned and was currently in the motor pool area of the company," and soon thereafter the agent came down to pick up appellant.

Vanney informed Reeves of his rights, which initially he waived. Subsequently, he requested counsel; and Vanney "immediately terminated the interview." Vanney made no effort to get an attorney for him but instead just released him to the military police to take to the stockade. Although it was still within the normal duty hours of the Trial Defense Service, Vanney did not call there for a lawyer, "because I found in the past that at the time I called them, they state that—just don't interview them anymore and we'll get to them later." Vanney did not mention to the military police that appellant had requested an attorney "because no one was going to interview him again." He explained: "I don't know that it's necessary to get an attorney for the client when I'm not going to interview him."

Later that same day, Captain Kozak went down to the stockade, where Reeves was being processed in. This processing involved a search of his person. As the confinement personnel finished with the in-processing, Kozak "called him over and said, 'I want to talk to you.'" Private Hahn, another soldier from his company, was also being processed into the stockade; and while Reeves was being processed, Captain Kozak would talk with Hahn; and vice versa. Thus, he "spoke with Reeves maybe two or three different times that evening, not only at the location at the desk [by the front door of the stockade], but also, in the interview room." Kozak read

appellant his rights from "a rights warning card"; but appellant made no request for an attorney and said nothing about any conversation with Vanney. Rather, "he said that he did not want an attorney ... [and] in fact, that he wanted to talk to me." Subsequently, Reeves made an incriminating statement which, according to defense counsel, also resulted in the Government's obtaining important derivative evidence.

In denying a defense motion to suppress, the military judge held that appellant's statement to Kozak was admissible. As to this ruling, the Court of Military Review commented in its original opinion:

In his initial interrogation by police officers, the appellant requested counsel and questioning was terminated. Subsequently, he confessed to his company commander, who did not know of the previous request for counsel, and who did properly advise the appellant of his rights. We find based on the particular facts and circumstances of this case, beyond a reasonable doubt that the appellant knowingly and intelligently waived his right to counsel. *See Oregon v. Bradshaw*, [462] U.S. [1039], 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *United States v. Harris*, 16 M.J. 562 (A.C.M.R. 1983).

17 M.J. 832, 834 (1984).

In refusing to reconsider, the Court of Military Review explained in its memorandum opinion:

In *Edwards v. Arizona*, 451 U.S. 477 [101 S.Ct. 1880, 68 L.Ed.2d 378] (1981), the Supreme Court addressed the issue of protecting an accused in police custody from improper reinterrogation after the accused has asserted his rights in requesting counsel. In the case before this Court the appellant was not in police custody within the meaning of *Edwards*. However, as the appellant had requested counsel previously and as his commander was required to advise him of his rights under Article 31, Uniform Code of Military Justice, 10 U.S.C. 831 (1976), the government has a heavy burden to establish that the appellant made a knowing

and intelligent waiver of his rights. Based on a review of the totality of the circumstances and the particular facts and circumstances of the appellant's case, this Court determined beyond a reasonable doubt that the appellant did in fact knowingly and intelligently waive his right to counsel. *Cf. Oregon v. Bradshaw*, [462] U.S. 1039, 103 S.Ct. 2830, 2835 [77 L.Ed.2d 405] (1983); *Id.* at 2837 [103 S.Ct. at 2836] (Powell, J., concurring).

## II

In *Smith v. Illinois*, 469 U.S. ——, 105 S.Ct. 490, 494–95, 83 L.Ed.2d 488 (1984), the Supreme Court reversed the Illinois Supreme Court in a *per curiam* opinion which makes clear that the invocation of the right to counsel and waiver of that right

> are entirely distinct inquiries, and the two must not be blurred by merging them together.

The importance of keeping the two inquiries distinct is manifest. *Edwards* set forth a "bright-line rule" that *all* questioning must cease after an accused requests counsel. *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984). In the absence of such a bright-line prohibition, the authorities through "badger[ing]" or "overreaching"—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983); *Fare v. Michael C.*, 442 U.S., at 719, 99 S.Ct. at 2568. With respect to the waiver inquiry, we accordingly have emphasized that a valid waiver "cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation." *Edwards*

*v. Arizona*, 451 U.S., at 484, 101 S.Ct. at 1885. Using an accused's subsequent responses to cast doubt on the adequacy of the initial request *itself* is even more intolerable. "No authority, and no logic, permits the interrogator to proceed ... on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all." 102 Ill. 2d, at 376, 466 N.E.2d, at 241 (Simon, J., dissenting).[1]

(Footnotes omitted.)

Unquestionably, appellant made his request for counsel perfectly clear to Special Agent Vanney, who interviewed him at the time of his apprehension. The Government was not free to interrogate appellant so long as he remained in custody. Obviously, Reeves was in custody while being processed into the stockade; and his questioning by Captain Kozak cannot be characterized as anything other than interrogation. Indeed, the captain recognized that it was interrogation because he read appellant his rights. To rely on appellant's failure to repeat his request for counsel when he was interviewed by Kozak involves the same sin condemned in *Smith v. Illinois, supra*, when the court stated, "Using an accused's subsequent responses to cast doubt on the adequacy of the initial request *itself* is even more intolerable."[2]

## III

Appellate government counsel contend that Captain Kozak went to the stockade to visit appellant and Hahn in order to comply with Army directives that, when members of his unit are confined, a commander must visit them periodically—primarily in order to inform himself as to their welfare and as to any special needs generated by their confinement. According to the Govern-

---

**1.** In remanding *United States v. Goodson*, 18 M.J. 243 (C.M.A.1984), for reconsideration by this Court, the Supreme Court relied on its *per curiam* opinion in *Smith v. Illinois*, 469 U.S. ——, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). *Goodson v. United States*, —— U.S. ——, 105 S.Ct. 2129, 85 L.Ed.2d 493 (1985).

**2.** The three dissenters in *Smith* apparently did not disagree with this proposition, but only questioned the adequacy of the original request for counsel. There is no question here that appellant's request for counsel was adequate.

ment, when Captain Kozak appeared for this purpose, appellant "initiated" a conversation with him; and so the statements Reeves made subsequently would be admissible. *See Oregon v. Bradshaw, supra.*

The Court of Military Review had no occasion to rule on this contention or to consider a further government contention that, even if appellant's pretrial statement to Captain Kozak was inadmissible, its reception was constitutionally harmless error. Because we decide in appellant's favor the issue on which we granted review, we believe it appropriate that the court below have an opportunity to deal with these other questions.

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for consideration of the issues referred to in Part III, above. Thereafter, the record will be returned to this Court for final disposition.

Judge FLETCHER did not participate.

COX, Judge (concurring in the result):

In a previous case, I expressed my concern over the broad application of the "bright line rule" of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), within the military community. *See United States v. Harris*, 19 M.J. 331, 341 (C.M.A.1985) (Cox, J., concurring in the result). This concern is intensified in the present case where the facts more clearly demonstrate the unique military problems which can result from an inflexible approach to this rule.

Captain Kozak, who elicited the incriminating responses from appellant, was his company commander. He interviewed appellant at the stockade pursuant to his command responsibility for a member of his unit who was confined. *See* paras. 2–2*b* and 2–6*f*(1), Fort Lewis Supp. 1 to AR 190–47, Military Police Area Confinement Facilities (Apr. 28, 1976). He was not a policeman and was not acting ostensibly in a law-enforcement capacity. Captain Kozak was not informed by the military police, appellant, or anyone else that appel-

lant had earlier exercised his right to counsel. Finally, he fully advised appellant of his rights under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, which the latter waived.

In this context, applicability of the "bright line rule" of *Edwards v. Arizona, supra*, is doubtful. Quite simply, we are not dealing with the *police practices* condemned in that decision and its progeny. Moreover, the inflexible application of this rule in the above context might seriously undermine the important, if not vital, relationship between a company commander and a member of his unit. *See United States v. Harris, supra* at 342 n. 3. Of course, the latter concern would be less compelling if Captain Kozak intended to act as a law-enforcement agent when he visited appellant. In any event, as indicated in the lead opinion, this case might be resolved on narrower grounds not yet adequately addressed by the court below. Accordingly, I am prepared to assume applicability of *Edwards v. Arizona, supra*, and its progeny to the present case.

I agree with the conclusion of the lead opinion that this case should be remanded for consideration of the specific questions stated therein. At the present time, however, I cannot join the lead opinion in holding that the trial judge and the lower court erred in ruling the statement was admissible. The question whether appellant or Captain Kozak initiated the discussions between them concerning the charged offenses is certainly critical in determining admissibility of appellant's statement. *See Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983). This question is not relevant in determining whether appellant previously invoked his right to counsel. *See Smith v. Illinois*, 105 S.Ct. 490 (1984). However, it is a relevant and necessary inquiry pertaining to whether a subsequent waiver by appellant was valid. *Id.* at 495. Accordingly, although the finding of waiver by the lower court was incomplete, its determination of admissibility may still be correct depending on the resolution of the initiation question. *See Oregon v. Bradshaw, supra* 103 S.Ct. at 2834–35.