UNITED STATES, Appellee,

v.

Private First Class Andrew R. REEVES, 537–80–0539, United States Army, Appellant.

CM 443401.

U.S. Army Court of Military Review.

10 Dec. 1985.

Released for Publication 17 Jan. 1986.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Major Eric T. Franzen, JAGC, Captain Bernard P. Ingold, JAGC (on brief); Colonel R. Rex Brookshire II, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Thomas J. Feeney, JAGC, Captain Guy J. Ferrante, JAGC.

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Captain Richard G. Mann, Jr., JAGC (on brief); Captain Thomas E. Booth, JAGC, Captain Leonard L. Lucey, JAGC.

Before RABY, CARMICHAEL, and ROBBLEE Appellate Military Judges.

## MEMORANDUM OPINION ON REMAND

RABY, Senior Judge:

This case is before the court on remand by the United States Court of Military Appeals for consideration of the following issues:[1] (a) whether appellant "initiated" the conversation that occurred between him and his company commander, Captain Gerard Kozak, at the stockade; and (b) assuming *arguendo* that appellant's pretrial statement to Captain Kozak was inadmissible, did its reception in evidence result only in error that was "constitutionally harmless."

■ The government importunes this court to opine that the "bright line rule" of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), does not apply "to discussions with military commanders." We decline to do so. First, we believe such a determination is beyond the scope of the remand in this case. Secondly,

1. *United States v. Reeves,* 20 M.J. 234 (C.M.A. 1985).

we believe that the government's position ultimately would result in a serious impairment of the *Article 31/Tempia* [2] rights of servicemembers, providing a convenient legal refuge for those individuals who are prone to resort to deceit and coercion in the conduct of criminal investigations. Further, *it is a commander*, and not the provost marshal or criminal investigation division chief, *who is primarily responsible for discipline, law, and order within his command*. Arguments to the contrary do not impress this court. To argue that *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, should not apply to commanders overlooks the true scope of a commander's responsibilities. Thus, we find ourselves in agreement with appellant's counsel that: "A 'company commander' exception to the *Edwards* bright line test would promote unnecessary uncertainty and confusion into military investigations *and could lead to easy circumvention of a rule designed to enhance a fundamental constitutional right.*" (Emphasis added). Such long-range developments would not promote fundamental fairness in the military justice system.

It is not easy to determine whether a commander is acting in a "law enforcement role" when he questions a member of his command who is suspected of a crime. Normally, whenever a commander advises the servicemember of his *Article 31/Tempia* rights prior to questioning, our years of military justice experience alert us to the reasonable probability that the commander is acting, at least in part, because of his responsibility for maintenance of law, order, and discipline within his command. The government has also argued that the principles of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, are too complex and time-consuming for commanders to understand. We reject this assertion *in toto*.

■ In the case at bar, we find that the government has failed to establish by a preponderance of the evidence that appellant initiated the conversation with his company commander which resulted in his incriminating statements. *See generally, Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Further, we are not persuaded by the facts in this case that the appellant's company commander was not engaged in a law enforcement function when he interrogated appellant. Assuming, *arguendo,* that the particular responsibilities of office which motivate a commander to question a soldier at any given time can be clearly defined and separated from other equally important command duties, we find that in this case appellant's commander was, in large measure, fulfilling his responsibilities for maintaining discipline, law, and order within his unit when he interviewed the appellant. We believe it is not insignificant that appellant's commander gave an *Article 31/Tempia* warning to the appellant, and even borrowed a military policeman's rights-warning card to administer this warning in compliance with the high degree of accuracy required by law.

■ We further find that the Criminal Investigation Division agent, Special Agent (SA) Vanney, was at least negligent in failing to notify either the military police or appellant's commander that appellant had requested to consult with counsel. We find it too incredible to believe that SA Vanney thought no one else would attempt to question appellant, and thus there was no need to relay appellant's request for counsel to anyone. Considering that appellant was not released forthwith, but was transported to the military police for continued custody, we believe SA Vanney either did recognize or should have recognized that someone else might attempt to question appellant.

Considering all the circumstances of this case, we are not persuaded that the error in admitting appellant's statement to his company commander was harmless. In

---

**2.** Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831 (1982); *United States v. Tempia,* 37 C.M.R. 249 (C.M.A.1967).

view of the questionable credibility of the accomplice, Private E–2 Garcia-Luftig, we believe this error reasonably might have affected the outcome of the trial. In our minds, no doubt exists that this error contributed to appellant's conviction; moreover, the state of the remaining evidence fails to meet the "overwhelming evidence of guilt" test to our satisfaction.

Finally, we find that the government has failed to establish that it obtained the information regarding Private Garcia-Luftig's transport of appellant to Vancouver, Washington, either by means of "independent source" or by "inevitable discovery". The government did, however, establish by a preponderance of the evidence that the portion of Private Garcia-Luftig's testimony, *i.e.*, that he had taken appellant somewhere, without specifically identifying the place, was based on information obtained by reliance solely on an "independent source."

In accordance with the mandate of the United States Court of Military Appeals, dated 2 August 1985, appellant's trial record is "returned to [that] court for final disposition."

Judge CARMICHAEL and Judge ROB-BLEE concur.

UNITED STATES, Appellee,