**UNITED STATES, Appellee,**

v.

**Johnnie K. GOODSON, Specialist Four U.S. Army, Appellant.**

**No. 44430.**
**SPCM 16459.**

U.S. Court of Military Appeals.

April 7, 1986.

For Appellant: *Colonel Brooks B. La Grua, Lieutenant Colonel William P. Heaston, Captain Bernard P. Ingold* (on brief).

For Appellee: *Colonel Adrian J. Gravelle, Lieutenant Colonel Gary F. Roberson, Lieutenant Colonel John F. De Pue, Captain Patrick J. Cunningham* (on brief).

*Opinion of the Court*

PER CURIAM:

After our original decision in this case, *United States v. Goodson*, 18 M.J. 243 (C.M.A.1984), appellant petitioned the United States Supreme Court for a writ of certiorari. The writ was granted; and the Supreme Court remanded the case to us for further consideration in light of its decision in *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). *Goodson v. United States*, — U.S. —, 105 S.Ct. 2129, 85 L.Ed.2d 493 (1985).

As directed by the Supreme Court, we have now reevaluated the case in light of the *Smith* decision. Also, we have considered subsequent decisions of this Court which involve the applicability of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *See United States v. Reeves*, 20 M.J. 234 (C.M.A.1985); *United States v. Harris*, 19 M.J. 331 (C.M.A.1985). Now we are convinced that this Court erred when it ruled that appellant's statement to Military Police Investigator (MPI) Dennis Allinder was admissible in his trial by court-martial.

Goodson initially was apprehended by Sergeant Faron Slye, who had arrived at the crime scene to assist another military policeman in apprehending nine soldiers suspected of possessing illegal drugs. Appellant was then taken to the military police investigators' offices for "processing." Almost immediately he voiced a request for an attorney; but, in response, Slye stated "that all" he was going to do was read him his rights and fill out a field interview sheet. Slye then recorded certain information about Goodson on the field-interview worksheet; and again appellant asked to see a lawyer. Slye told him that the request had been referred to the investigator on duty, MPI Allinder.

These events occurred about 2:30 a.m. on February 28, 1981; but because there were a large number of suspects, appellant waited until about noon before Allinder interviewed him. Meanwhile, about daybreak,

he asked another investigator if he could use a telephone to contact a "JAG"; but he was told that he could not call "the on-duty JAG officer."

When Allinder finally interviewed appellant, he used an Army Form 3881 (Rights Warning Procedure/Waiver Certificate) to advise Goodson of his rights. Thereupon, appellant waived his right to remain silent and to have counsel present and made a statement admitting abuse of a controlled substance. Appellant did not ask Allinder if he could see an attorney or mention that previously he had asked for a lawyer. At trial, Goodson testified that, when he was interviewed by Allinder, he had not requested an attorney because he did not believe that he would be able to speak with one "[b]ecause it was already denied to me, two or three times."

When this Court made its original decision, the lead opinion took the position that Goodson's various requests for an attorney—made prior to his interview by MPI Allinder—were inoperative to bring *Edwards v. Arizona, supra,* into play. Upon reexamining the facts, we now are persuaded that this opinion gave excessive weight to subsequent events and too little weight to the close relationship between the events that occurred before Goodson requested counsel and the interview which took place later that day. Implicit in Sergeant Slye's action advising appellant of his rights and preparing the field-interview sheet was a determination that appellant was a suspect and would be interviewed concerning the drug offenses. Goodson was in custody and had addressed three requests for counsel to the person in apparent authority.[1] He had waited for several hours while interviews were under way with some of the others who had been apprehended at the same time.

Under these circumstances, it is artificial to draw a distinction between the formal interview with Allinder and these events which led up to it. Even if under some other circumstances a request for counsel made prior to the commencement of interrogation might not bring *Edwards v. Arizona, supra,* into play, we have no doubt that here appellant's requests had this effect.

When Goodson was interviewed by MPI Allinder, he did not request a lawyer or mention his earlier request for an attorney. However, as the Supreme Court has made clear in *Smith v. Illinois, supra,* this later conduct did not render ambiguous or inoperative the original request for counsel. Instead, once that request had been made, it retained its effect, until the suspect "initiated" a discussion of the offense as to which he was being interviewed. *See Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

When this case was originally considered, appellate government counsel urged us to hold that any error in admitting appellant's statement to Allinder was harmless because subsequently he confessed to his company commander, Captain Fox, after receiving appropriate warnings of his rights. Captain Fox testified that, although she was aware that appellant had been apprehended, she did not know that he had made a statement or asked for an attorney. Because the Court of Military Review did not determine whether the statement to Captain Fox might be admitted despite the inadmissibility of the statement given to MPI Allinder,[2] that court should have the opportunity to consider this issue and also to consider whether, if the later statement were independently admissible, the error in receiving the earlier statement to Allinder was harmless beyond a reasonable doubt.[3]

---

1. Slye testified that he informed Allinder of appellant's request, but Allinder stated that he did not remember being so advised. We need not resolve this difference because it is clear that Allinder had been up for a considerable period of time and may either not have heard Slye's remark or have forgotten it.

2. *Cf. Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

3. *See also United States v. Reeves,* 20 M.J. 234 (C.M.A.1985); *United States v. Harris,* 19 M.J. 331 (C.M.A.1985).

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further review in light of this decision.