UNITED STATES, Appellee,

v.

Specialist Four (E–4) Johnnie K. GOODSON, 551–25–8552, United States Army, Appellant.

No. SPCM 16459.

U.S. Army Court of Military Review.

17 Sept. 1986.

For Appellant: Captain Scott A. Hancock, JAGC (argued); Major Joel D. Miller, JAGC, Major Eric T. Franzen, JAGC (on brief).

For Appellee: Captain Patrick A. Hewitt, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Samuel J. Rob, JAGC (on brief).

Before DeFORD, WILLIAMS, and KENNETT Appellate Military Judges.

## OPINION OF THE COURT ON REMAND

KENNETT, Judge:

This case has a long and often reported history. Appellant was originally convicted of several drug-related offenses. His conviction was affirmed by this court, *United States v. Goodson*, 14 M.J. 542 (A.C.M.R. 1982), and then by the United States Court of Military Appeals, *United States v. Goodson*, 18 M.J. 243 (C.M.A.1984). Thereafter, appellant petitioned the United States Supreme Court for writ of certiorari. The Supreme Court granted the writ and remanded the case to the Court of Military Appeals for further consideration in light of *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). *Goodson v. United States*, —— U.S. ——, 105 S.Ct. 2129, 85 L.Ed.2d 493 (1985). On further review, the Court of Military Appeals re-

versed its earlier decision concerning the admissibility of appellant's statement to Military Police Investigator (MPI) Allinder. *United States v. Goodson*, 22 M.J. 22 (C.M.A.) (*Goodson* II), *petition for reconsideration denied*, 22 M.J. 247 (C.M.A. 1986). The case is now before this court on remand from the Court of Military Appeals, *Goodson* II, 22 M.J. at 23, to consider, *inter alia*, whether appellant's statement to his company commander, made subsequent to the statement to MPI Allinder, is independently admissible. We hold the statement made to the company commander, Captain (CPT) Fox, was inadmissible.

## I. Facts

The facts surrounding appellant's apprehension and his statements to Sergeant Slye and MPI Allinder are sufficiently set out in *Goodson* II, 22 M.J. at 22–23. It is important, however, to more specifically describe the events leading to appellant's statement to CPT Fox.

Appellant was apprehended at approximately 0230 on Saturday, 28 February 1981. Almost immediately after being apprehended, appellant requested an attorney. Twice more, before his statement to MPI Allinder, appellant requested counsel. Appellant testified that, following the last request for a "JAG," he was told by MPI Allinder "that the acting JAG on duty was just for their [the investigators'] use only and [that appellant] couldn't use him." Appellant was detained at the military police (MP) station until approximately 1200 on Saturday.

On the following Monday, 2 March 1981, at approximately 1630, appellant was called to his company commander's office. Prior to her meeting with appellant, CPT Fox had been informed by MPI Allinder that eight soldiers, including appellant, had been apprehended for involvement with drugs. Also prior to her discussion with appellant, CPT Fox went to the MP station

and read the "blotter" report concerning appellant. Although not knowing appellant had been questioned, CPT Fox was "sure that he was questioned...." Record at 67. CPT Fox was never told appellant had invoked counsel. When appellant reported to CPT Fox, he was read the Article 31/*Tempia*[1] rights, did not again invoke counsel rights or inform CPT Fox he had previously asserted those rights, and made an incriminating statement.

## II. Statement to CPT Fox

In *United States v. Reeves*, 20 M.J. 234 (C.M.A.1985), the Court of Military Appeals remanded the case to this court to determine, in part, whether certain statements made to a company commander had been initiated by appellant. On remand, this court was presented the argument that the "bright line rule" of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), was inapplicable to "discussions with military commanders." This court refused to accept that position, found that *Edwards* was applicable in an accused/commander situation, and resolved the remand issue against the government. *United States v. Reeves*, 21 M.J. 768 (A.C. M.R.1985). When the case was returned to the Court of Military Appeals, the findings of guilty and the sentence were set aside. *United States v. Reeves*, 21 M.J. 391 (C.M. A.1985) (summary disposition).[2]

The analysis used by this court in *Reeves* is equally applicable here. Our analysis begins with the accepted proposition that "the different character of the military community and of the military mission requires a different application" of certain constitutional protections. *See Brown v. Glines*, 444 U.S. 348, 354, 100 S.Ct. 594, 599, 62 L.Ed.2d 540 (1980), quoting *Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2567, 41 L.Ed.2d 439 (1974); *United States v. Thomas*, 21 M.J. 928, 932 (A.C.M.R. 1986). Because of that "different application", and the military obligation of a sol-

---

1. Uniform Code of Military Justice art. 31, 10 U.S.C. § 831 (1982) [hereinafter cited as UCMJ]; *United States v. Tempia*, 37 C.M.R. 249 (C.M.A. 1967).

2. This court's opinion on remand, 21 M.J. 768 (A.C.M.R.1985) is also published as an appendix to our higher court's summary disposition. 21 M.J. 391 app. (C.M.A.1985).

dier to provide information to military authorities, our courts have focused attention on the protections provided by Article 31, UCMJ, our fifth amendment equivalent. *See United States v. Schneider*, 14 M.J. 189, 192–93 (C.M.A.1982). The rights preserved by Article 31, UCMJ must, therefore, be scrupulously protected.

In this vein, and to give teeth to the protection afforded by *Miranda*[3]/*Edwards*, knowledge of an accused's request for counsel has been imputed to other investigators and investigating agencies. *United States v. Harris*, 19 M.J. 331, 339 (C.M.A.1985); *United States v. Scalf*, 708 F.2d 1540, 1544 (10th Cir.1983); *cf. Michigan v. Jackson*, —— U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (although holding that *sixth* amendment principles require that one state actor's knowledge be imputed to another state actor, the Court drew heavily on *Edwards'* fifth amendment analysis). The rationale behind imputing knowledge is clear: if the concern of *Miranda* and *Edwards* is the prevention of widespread problems of police violating fifth amendment protections, failure to impute knowledge to commanders will provide a ready conduit for bypassing *Edwards*. In the military context, the aperture for deviating from *Edwards* is particularly wide because commanders have the responsibility, among others, to conduct a preliminary inquiry into suspected offenses committed by soldiers of their command. This inquiry may involve questioning the suspect. Manual for Courts-Martial, United States, 1969 (Rev. ed.), para. 32*b* (similar provisions concerning the commander's duty to conduct a preliminary inquiry into suspected offenses are now found in Man-

ual for Courts-Martial, United States, 1984, Rule for Courts-Martial 303). As Senior Judge Raby noted, however, lines of demarcation between administrative questioning and prosecutorial questioning are sometimes obscure. *Reeves*, 21 M.J. at 769. As a result, potential for abuse is great.

■ In the case at bar, CPT Fox, the commander primarily responsible for law and order, *Reeves*, 21 M.J. at 769, called appellant to her office for questioning. She had been apprised of the apprehension, knew appellant had been taken to the MP station, assumed he had been questioned and, in fact, had checked the MP blotter concerning the apprehension. We also note CPT Fox advised appellant of his rights before questioning. We are unpersuaded CPT Fox was not acting in a law enforcement posture when she questioned appellant.[4]

The government makes two arguments opposing the position we have taken. They assert we overly burden commanders by imputing to them knowledge of previously invoked counsel rights. In this case, however, CPT Fox was well aware of appellant's involvement with military police and was convinced he had been questioned. It certainly would not be overburdensome for a commander in a similar situation to ask the suspect if he had previously requested counsel. *See United States v. Harris*, 19 M.J. at 343 (Cox, J., concurring)[5]. Additionally, as in *Reeves*, the military police were at least negligent in failing to inform CPT Fox that counsel had been invoked. Although an Army regulation requires that interrogation stop when a suspect invokes counsel rights and that the suspect be provided the location and telephone number of

---

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** Indeed, CPT Fox recognized her duty to conduct a preliminary inquiry. The following excerpts from the record are illustrative:
> Q: Your questioning of the accused, was that done on behalf of any military police investigators?
> A: No.
> Q: No one asked you to go ahead and question these people?

A: No. *It is my responsibility as the Commander.*
Record at 64 (emphasis added).
. . . .
> Q: So the purpose of your conducting the interview at that time was to—
> A: Gain as much information as I possibly could concerning the offense.
Record at 69.

**5.** Should the suspect answer falsely, he should not be permitted to benefit from the falsehood. See *Harris*, 19 M.J. at 343 (Cox, J., concurring)

the nearest "staff judge advocate", Army Regulation 190–30, Military Police: Military Police Investigations, appendix C, para. C–3a (1 June 1978), such procedures were obviously not observed here. Appellant should not be penalized for the government's failure to abide by its own regulation. *See United States v. Russo,* 1 M.J. 134 (C.M.A.1975); *United States v. Gladdis,* 12 M.J. 1005, 1007 (A.C.M.R.), *petition denied,* 14 M.J. 100 (C.M.A.1982). Furthermore, couldn't the fact that counsel had been requested be easily noted on the MP blotter? Adherence to such simple procedures would alleviate many problems arising in the *Edwards* area.

Finally, the government argues counsel was "made available" prior to the statement to CPT Fox; therefore, *Edwards* was not violated. They argue, because appellant was at liberty from approximately 1200, 28 February, until 1630, 2 March, he was free to contact counsel. In support of this proposition, they cite *United States v. Applewhite,* 20 M.J. 617, 619 (A.C.M.R.), *petition granted,* 21 M.J. 275 (C.M.A. 1985) and *United States v. Whitehouse,* 14 M.J. 643, 645–46 (A.C.M.R.1982). In *Applewhite* another panel of this court deemed a five-day-period during which appellant had the opportunity to consult with counsel, but did not do so, sufficient to satisfy the "counsel made available" requirement. *Applewhite,* 20 M.J. at 619. This analysis, particularly in light of the protections involved, seems incomplete. We prefer to consider time as a factor to be weighed under the totality of circumstances. Obviously, if the time between statements is great and the accused was continually at liberty, then, under *Edwards,* counsel might be deemed to have been "made available." Here, however, the majority of appellant's liberty time occurred on a weekend when it was quite likely that he might believe he could not find a lawyer. This feeling of being unable to find a lawyer was no doubt exacerbated by the fact that appellant had been told the only available "JAG" was for government use. Although appellant did not report to CPT Fox until 1630 on Monday, a business day, the record is unclear whether appellant was at liberty or under restriction. Under the totality of the circumstances, we do not believe counsel was made available.

### III. Harmless Error

[redacted] We are left with the determination whether the statements taken in violation of *Edwards* were harmless beyond reasonable doubt. *United States v. Remai,* 19 M.J. 229 (C.M.A.1985); *see United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Two illegally obtained inculpatory statements, under the facts of this case, cannot be deemed harmless.[6] We find as fact that the remaining evidence is insufficient to sustain the findings of guilty of the Additional Charge and its specifications.

### IV. Multiplicity

[redacted] There exists an additional error which must be addressed. Appellant was convicted of one specification each of possession and use of marijuana. Specification 1 of the Charge alleges appellant, on 28 February 1981, at Aberdeen Proving Ground, Maryland, possessed some amount of marijuana. Specification 2 of the Charge alleges use of marijuana at the same time and place. The language of the specifications and the providence inquiry convince us the possession was multiplicious with the use. *United States v. Bullington,* 18 M.J. 164 (C.M.A.1984).

6. Because of our decision, we need not reach the issue whether, if the statement to CPT Fox was deemed independently admissible, the holding in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), mandates that the statement to CPT Fox was not tainted by the illegally obtained statement to MPI Allinder. The government argues the *Edwards* violation was mere "procedural" error which was cured by the subsequent reading of *Miranda* rights, citing *Oregon v. Elstad,* 105 S.Ct. at 1292. *Cf. United States v. Cherry,* 794 F.2d 201, 207 (5th Cir.1986). That position, however, seems in conflict with the Supreme Court's opinion in *Oregon v. Elstad,* 105 S.Ct. at 1295–1296 n. 3.

The findings of guilty of Specification 1 of the Charge and of the Additional Charge and its three specifications are set aside. Specification 1 of the Charge and the Additional Charge and its specifications are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of errors noted and the entire record, the court affirms only so much of the sentence as provides for confinement for three months, forfeiture of $334.00 pay per month for three months, and reduction to the grade of E–1.[7]

Senior Judge DeFORD and Judge WIL-LIAMS concur.

---

7. The errors personally asserted by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982) are cured by our decretal paragraph.