UNITED STATES, Appellee,

v.

Christopher J. JONES, Private First Class U.S. Army, Appellant.

No. 53,464.
CM 446306.

U.S. Court of Military Appeals.

Aug. 31, 1987.

For Appellant: *Captain Stephanie C. Spahn* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Arthur L. Hunt, Major Marion E. Winter, Captain Carolyn F. Washington* (on brief); *Lieutenant Colonel Joel D. Miller.*

For Appellee: *Captain Joseph P. Falcone* (argued); *Lieutenant Colonel Adrian J. Gravelle* and *Lieutenant Colonel Joseph A. Rehyansky* (on brief); *Colonel Norman C. Cooper* and *Captain Denise K. Vowell.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial without members. Contrary to his pleas, he was convicted of assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928, and was sentenced to confinement for 2 1/2 years; total forfeitures; reduction to pay grade E–1; and a bad-conduct discharge. The convening authority approved the sentence, and the Court of Military Review affirmed. This Court granted review of one issue, as follows:

> WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S MOTION TO SUPPRESS AN ORAL STATEMENT MADE BY APPELLANT WHILE IN HANDCUFFS IN RESPONSE TO QUESTIONS BY HIS FORMER PLATOON SERGEANT.

Finding no error prejudicial to the substantial rights of appellant, we affirm. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

Appellant was apprehended on June 26, 1984, for attempting to murder Corporal Michael Guyton by shooting him. He was taken to the office of the Criminal Investigation Command (CID) at Fort Campbell, Kentucky. After being advised of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b), appellant made a sworn statement in which he admitted that he had shot Corporal Guyton. At trial, appellant did not contest the voluntariness of this confession. Following the CID interview, appellant was placed in pretrial confinement.

Appellant's allegation that the military judge committed prejudicial error arises from the trial testimony of Staff Sergeant Leo Dudley. Sergeant Dudley testified that during February and March 1984, he had been appellant's platoon sergeant, and, at the time Corporal Guyton was shot, he

was serving in the same company as appellant. On June 27, 1984, Sergeant Dudley had come into the unit orderly room at the same time as appellant and his escort. He was aware appellant was a suspect in the shooting of Corporal Guyton and, when they saw each other, appellant was wearing handcuffs. Sergeant Dudley was wearing a military uniform displaying his "insignia of rank," and appellant was in fatigues. Dudley stated that he "asked ... [appellant if he] could ... talk to him a minute" and that this action had been prompted by the fact that another member of the platoon had told him appellant "was after" Private Felton, "and his last words" had been "that he was gonna get even with ... [Felton] or something to that effect."

As their conversation began, Sergeant Dudley neither advised appellant of his Article 31(b) rights nor ordered appellant to speak[1] because he "was under the assumption that all of that had been taken care of, ... since he was in handcuffs." When he asked appellant why he shot Corporal Guyton, appellant responded that he had not intended "to shoot Guyton, he meant to hit Felton." Sergeant Dudley then asked appellant, "[I]f you had a grudge to do something like that, then why didn't you just fight it out like a man?" Appellant answered "that he started to throw ... [Felton] off the balcony but he was afraid he would ... [get] in trouble." At that, Dudley stated, "[W]ouldn't that be less trouble than you are in now?" He asked appellant if he had "seen a lawyer, and ... if he wanted ... [Dudley] to call his parents for him." The conversation lasted about 3 minutes and terminated when appellant's escort said, "[L]et's go."

Sergeant Dudley characterized his conversation with appellant "as an informal counseling ... session" and stated he had asked appellant why he shot Guyton simply because he was "curious." No one had tasked Sergeant Dudley with obtaining information from appellant, and the conversation seemed to be a typical friendly meeting.

After hearing extensive arguments from both the Government and the defense, the military judge denied the defense motion to "suppress alleged admissions made by ... [appellant] to ... Sergeant ... Dudley." He ruled that Sergeant Dudley questioned the appellant out of "personal curiosity" and was not acting in any official capacity. The military judge did find, however, "that although Sergeant Dudley was motivated by his personal curiosity, ... [his actions] could and probably would have ... [appeared] to the accused, ... [as though Sergeant Dudley] was acting in an official capacity." Relying on this Court's decision in *United States v. Duga*, 10 M.J. 206 (C.M.A. 1981), the military judge found that Sergeant Dudley's testimony was admissible because he had not been acting in an official capacity.

The admissibility of a statement given by one servicemember to another without Article 31 warnings is governed by *Duga*. There, we set forth the following rule for determining whether these unwarned statements could be admitted into evidence at trial:

> [I]t is necessary to determine whether (1) a questioner subject to the Code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) whether the person questioned perceived that the inquiry involved more than a casual conversation. *United States v. Gibson, supra* [3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954)]. Unless both prerequisites are met, Article 31(b) does not apply.

*Id.* at 210 (footnote omitted).

The *Duga* test was designed to prevent a superior from overreaching a subordinate for the purpose of gathering information. Because of the effect of superior rank upon one subject to military law, merely asking a question under certain circumstances

---

1. No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

may be equivalent to a command. The *Duga* decision was an attempt to safeguard servicemembers from compulsory self-incrimination, coercion, and command influence. The uniqueness of the military justice system demands that such subtle pressures as rank, duty, or other similar relationships be purged from the interrogation process.[2]

It is upon this basis that we analyze the present case. We adopt the findings and holdings of the Court of Military Review that the military judge "could ... conclude from the evidence that SSG Dudley was not acting in an official capacity" when he posed his questions to appellant and that his motive for asking the questions was simple curiosity. Unpub. op. at 2. As noted by the court below, neither the fact that the sergeant previously had served as appellant's platoon sergeant nor that he and appellant were serving in the same company at the time of trial caused the sergeant's questions to be "so 'clearly official or so demanding of an answer by virtue of his superior rank' as to transform his personal curiosity into an official inquiry. *See United States v. Dandaneau*, 5 U.S.C.M.A. 462, 464, 18 C.M.R. 86, 88 (1955)." Unpub. op. at 3. Because the facts as set out in the record before us do not meet the first prong of the *Duga* test, we need not address the matter of how appellant perceived Sergeant Dudley's motives for speaking to him. We conclude that warnings in accordance with Article 31(b) were not required.

The decision of the United States Army Court of Military Review is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring):

The two-pronged test of *United States v. Duga*, 10 M.J. 206, 210 (C.M.A. 1981), allows admission of an unwarned statement, unless (1) the questioner "was acting in an official capacity," and (2) "the person questioned perceived that the inquiry involved more than a casual conversation." In light of the purpose of Article 31(b), Uniform Code of Military Justice, 10 U.S.C. § 831(b), to avoid any possible coercive effects resulting from the rank or official status of the interrogator, it can be persuasively argued that, regardless of the motive for the inquiry, the perception of the person questioned should be sufficient to mandate exclusion of the unwarned statement. However, the language of Article 31(b) is more consistent with the position taken in *Duga*. That language is directed towards the behavior of interrogators; and persons engaged in casual conversation—like that which the military judge determined was involved in the present case—are not within its purview. Because Article 31(d) calls for exclusion of "statement[s] obtained from any person in violation of this article" and a self-incriminating comment made in an unofficial conversation has not been "obtained in violation of" Article 31(b), the absence of any warning does not necessitate exclusion.

Of course, an accused is still free to claim that his statement was involuntary in the traditional sense of that term, *cf. United States v. Murphy*, 18 M.J. 220, 239–42 (C.M.A. 1984); and his perception that he was being officially questioned may be relevant to that issue. However, if a conversation is really casual and informal, it may be very difficult for the defense to contest the voluntariness of any admissions by the accused.

In light of *Duga*—which, after further reflection, I still believe to have been correctly decided—I concur.

**2.** In more recent cases, such distinctions concerning the test prescribed in *United States v. Duga*, 10 M.J. 206 (C.M.A. 1981), have become more evident. For example, *United States v. Reeves*, 20 M.J. 234 (C.M.A. 1985), and *United States v. Lejeune*, 13 M.J. 563 (A.C.M.R.), *pet. denied*, 14 M.J. 224 (1982), held that warnings required under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, should have been given to the accused. In contrast, *United States v. Lewis*, 12 M.J. 205, 207 (C.M.A. 1982); *United States v. Barnes*, 19 M.J. 890, 892 (A.C.M.R. 1985), *aff'd.*, 22 M.J. 385 (C.M.A. 1986); and *United States v. Richards*, 17 M.J. 1016, 1019 (N.M.C.M.R.), *pet. denied*, 19 M.J. 27 (1984), exemplify situations where Article 31 warnings were not required.