UNITED STATES, Appellee

v.

**Thomas W. SCHROEDER, Airman First Class, U.S. Air Force, Appellant.**

No. 93–0374.
CMR No. 29094.

U.S. Court of Military Appeals.

Argued Feb. 1, 1994.

Decided July 14, 1994.

For Appellant: *Captain Eric N. Eklund* (argued); *Colonel Terry J. Woodhouse and Captain David D. Jividen* (on brief); *Colonel Jay L. Cohen.*

For Appellee: *Major Barnard N. Madsen* (argued); *Colonel Jeffery T. Infelise, Colonel Richard L. Purdon, Captain Thomas E. Wand* (on brief); *Lieutenant Colonel Thomas E. Schlegel.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

On October 10 and 11, 1990, appellant was tried by a general court-martial composed of a military judge sitting alone at Norton Air Force Base, California. He pleaded guilty to

possession of marijuana and of cocaine, possession of drug paraphernalia, and carrying a concealed weapon. Contrary to his pleas, he was convicted of wrongful use of marijuana and cocaine, possession of other drug paraphernalia, and resisting apprehension, all in violation of Articles 112a, 92, and 134, Uniform Code of Military Justice, 10 USC §§ 912a, 892, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 36 months, total forfeitures, and reduction to pay grade E–1. On January 23, 1991, the convening authority approved the sentence. On November 20, 1992, the Court of Military Review affirmed these results in an unpublished opinion.

On April 27, 1993, this Court granted review on the following issue:

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS PROSECUTION EXHIBITS 9A–9J, PROSECUTION EXHIBIT 10, AND ORAL STATEMENTS TO SPECIAL AGENT SCHIEFER.

We hold that the military judge did not err when he denied the defense motion to suppress. *See McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987); *cf. United States v. Goodson,* 22 MJ 22 (CMA 1986).

The facts concerning the granted issue, which were not in dispute, were found by the Court of Military Review as follows:

On the evening of 8 July 1990, a police officer for the Southern Pacific Railroad, with the aid of a nightscope, observed appellant snort something off the palm of his hand and smoke something out of a pipe on railroad right-of-way property. While in uniform, Officer Dipley approached appellant in a well-developed lit area to arrest him for suspected drug usage. A scuffle developed over a switchblade knife carried by appellant and he attempted to flee. After being sprayed with mace, appellant continued to flee and only submitted to arrest after Officer Dipley threatened to shoot.

Following his arrest and on the way to the county jail, the railroad police took appellant to a local community hospital to provide a non-consensual urinalysis. As they were driving to the hospital, appellant told the police he did not want to give a urine sample until he had the opportunity to talk with a lawyer. In response to this request, Officer Dipley told appellant he did not have the right to an attorney for a urinalysis, but he could call a lawyer after the booking process was finished at the county jail. The jail's policy was to not interrogate or advise suspects of their rights until after they had completed processing into the facility. Appellant was not advised of his rights during the administrative processing into the jail. No interrogation of appellant occurred during the in-processing except for one question posed by Officer Dipley. During the inventory of appellant's belongings, Officer Dipley found a small bag with white powder and asked, "What is this?" Appellant responded, "cocaine." At trial, appellant pleaded guilty to possession of this cocaine.

No interrogation of appellant on the contested charges occurred until Air Force Office of Special Investigations (AFOSI) Agent Schiefer arrived during the early morning hours of 9 July. Appellant was in the final stages of completing the required processing into the jail. A part of this processing included his election to make a phone call. He specifically decided not to make any phone calls even though the jail staff had advised him to keep a small amount of cash to call a lawyer. Appellant was escorted to an interview room to meet with Agent Schiefer where, for the first time, he was read his rights.

When appellant was advised of his right to counsel by Agent Schiefer, he initially indicated he did not want a lawyer, but made a statement, "I will eventually get a lawyer." In an effort to clarify appellant's equivocal intent to counsel, the agent asked, "What I really need to know is do you want an attorney right now?" Appellant responded, "No, not right now." For the next hour and a half, appellant confessed to his use of marijuana and cocaine,

never requesting the assistance of an attorney. Agent Schiefer re-visited appellant in the jail later that day and once again obtained a waiver of his right to counsel. Later that day Agent Schiefer used appellant's confessions to obtain a search warrant of his dormitory room, resulting in the seizure of drug paraphernalia. Four days later, while appellant remained in the county jail, he was again advised of his rights by Agent Schiefer, declined the assistance of counsel, and provided a written confession. Twelve days after his arrest, appellant was released from the county jail. He offered to assist local authorities as a drug informant but this temporary assistance terminated on 25 July, when appellant, for the first time, disclosed he was seeking the assistance of counsel.

Unpub. op. at 2–3.

. . .

On July 9, 1990, appellant was interviewed by Agent Schiefer of the AFOSI at the San Bernardino County Jail and made several oral admissions concerning his drug use. Based on those admissions, a search authorization for his dormitory room was obtained. A subsequent search resulted in seizure of drug paraphernalia which was admitted in evidence against him at his court-martial. Appellant was re-interviewed by Agent Schiefer later on July 9, 1990, and on July 12, 1990, when he provided a written confession to the OSI. At his court-martial, he moved to suppress all this evidence as unlawfully derived from earlier violations of his right to counsel under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and Mil.R.Evid. 304(a), Manual for Courts–Martial, United States, 1984.

■ The initial basis asserted for appellant's *Edwards* claim is conduct of the railroad police officer (Dipley) who arrested him and brought him to the San Bernardino County jail. He notes that, after his arrest, he told this police officer that "he wanted to talk to an attorney before he gave a urine sample." Thus, he concludes that, "having expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1885, *cited in Minnick v. Mississippi*, 498 U.S. 146, 150, 111 S.Ct. 486, 489, 112 L.Ed.2d 489 (1990). We disagree.

■ At the outset, we note that, although appellant was in custody of this railroad police officer at the time that he asked to see a lawyer, he not yet had been given his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] *See generally Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). Moreover, at this time, the arresting officer did not ask appellant any questions about his suspected offenses but only asked whether he would consent to a urinalysis. This simply is not "custodial interrogation" within the meaning of *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612. *See* 496 U.S. at 591–92, 110 S.Ct. at 2644–45, citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *see also United States v. Burns*, 33 MJ 316 (CMA 1991). *See generally* Mil.R.Evid. 305(d).

We also note that the Supreme Court has signaled its discomfort with anticipatory invocations of the *Miranda* right to counsel "in a context other than 'custodial interrogation.'" *McNeil v. Wisconsin*, 501 U.S. at 182 n. 3, 111 S.Ct. at 2211 n. 3.[2] Moreover,

---

1. Normally, a railroad police officer as a private citizen is not required to give *Miranda* warnings. *See* W. LaFave and J. Israel, *Criminal Procedure* § 6.10(b) at 540–42 (1984). However, Officer Dipley asserted that his arrest, transportation to the hospital for a urinalysis, and his booking of appellant were done under authority of California law. *Cf. United States v. Bowers*, 739 F.2d 1050, 1055–56 (6th Cir.1984), *cert. denied*, 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984); *People v. Chastian*, 733 P.2d 1206, 1213–14 (Col. 1987). *See generally* California Penal Code § 830.4 (railroad police have authority as peace officers in certain situations).

2. The majority opinion of the Supreme Court in *McNeil* said in footnote 3:

the Court has clearly stated that limited requests for counsel even in the context of custodial interrogation do not invoke one's right to counsel for all purposes. *See Connecticut v. Barrett,* 479 U.S. 523, 529–30, 107 S.Ct. 828, 832–33, 93 L.Ed.2d 920 (1987). Accordingly, we conclude that appellant's request was too little and too early to qualify as an invocation of *Miranda* under applicable Supreme Court precedent. *See also United States v. Ogden,* 572 F.2d 501 (5th Cir.1978), *cert. denied,* 439 U.S. 979, 99 S.Ct. 564, 58 L.Ed.2d 650 (1978); *Blasingame v. Estelle,* 604 F.2d 893, 896 (5th Cir.1979); *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979).

Appellant's case is materially different from that considered by this Court in *United States v. Goodson,* 22 MJ 22 (1986). There, the suspected soldier was apprehended by a military police officer and was read his rights by that officer at the military police investigator's office. That soldier, both before and after this advisement, repeatedly requested to see a lawyer concerning his impending investigation. That request was purportedly referred to a second military police officer who eventually interviewed appellant 10 hours later without acknowledging the earlier request. We held:

> Under these circumstances, it is artificial to draw a distinction between the formal interview with Allinder [the second officer] and these events which led up to it. Even if under some other circumstances a re-

quest for counsel made prior to the commencement of interrogation might not bring *Edwards v. Arizona,* [451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)], into play, we have no doubt that here appellant's requests had this effect.

22 MJ at 23.

In appellant's case, however, there was no rights' advisement made to him at all prior to his premature request to speak to counsel. Moreover, his request was limited to his urinalysis options, and it was made to an independent private police officer far from the situs of his eventual military interrogation. In these circumstances, we find a legitimate distinction between his formal interview and the events which led up to it. Accordingly, our decision in *Goodson* does not require reversal in this case. *See also United States v. Jordan,* 38 MJ 346 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1217, 127 L.Ed.2d 564 (1994).

■ Appellant next argues that Officer Dipley's unlawful questioning of him during his booking at the San Bernardino County Jail "tainted" his later admissions to Agent Schiefer. Final Brief at 11. Clearly, this questioning of appellant during the booking process was a violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Pennsylvania v. Muniz,* 496 U.S. at 602 n. 14, 110 S.Ct. at 2650–51 n. 14. Yet, under the circumstances of this case, we conclude that this unlawfully adduced admission did not "taint" appellant's later confession to Agent Schiefer. *See generally Ore-*

---

The dissent predicts that the result in this case will routinely be circumvented when, "[i]n future preliminary hearings, competent counsel ... make sure that they, or their clients, make a statement on the record" invoking the *Miranda* right to counsel. 501 U.S. at 184, 111 S.Ct. at 2212. We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation"—which a preliminary hearing will not always, or even usually, involve, *cf. Pennsylvania v. Muniz,* 496 U.S. 582, 601–602 [110 S.Ct. 2638, 2650–51, 110 L.Ed.2d 528] (1990)(plurality opinion); *Rhode Island v. Innis,* 446 U.S. 291, 298–303 [100 S.Ct. 1682, 1688–91, 64 L.Ed.2d 297] (1980). If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or

indeed even prior to identification as a suspect. *Most rights must be asserted when the government seeks to take the action they protect against.* The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation *does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.* Assuming, however, that an assertion at arraignment would be effective, and would be routinely made, the mere fact that adherence to the principle of our decisions will not have substantial consequences is no reason to abandon that principle. It would remain intolerable that a person in custody who had expressed *no** objection to being questioned would be unapproachable.

501 U.S. at 182, 111 S.Ct. at 2211 (emphasis added except for *).

*gon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *United States v. Marquardt,* 39 MJ 239 (CMA 1994).

Prior to his admission, appellant was observed by a police officer in the act of using drugs. He was then arrested by that same police officer who discovered drugs and drug paraphernalia in his possession. Finally, he was taken by that police officer to a hospital for a non-consensual urinalysis. Undoubtedly, appellant was aware that the white substance in the plastic bag discovered on his person during the booking process would also be tested by police to discover its contraband nature. In these circumstances, we conclude that his unwarned admission of its contraband nature "let [no] cat out of the bag" and had no substantial impact on his later voluntary and informed decision to speak to Agent Schiefer. *United States v. Spalding,* 29 MJ 156, 162 (CMA 1989); *see* Mil.R.Evid. 304(b)(3) (Change 2).

Appellant finally asserts that he invoked his right to counsel under *Miranda* when he later told Agent Schiefer that "I will eventually get a lawyer." Although this statement was made after appellant was advised of his right to counsel, it also was made after he had unequivocally waived that right. Moreover, on its face, this statement clearly asserts only an intent to secure counsel in the future. *Cf. United States v. McLaren,* 38 MJ 112 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994). Finally, the investigator stopped the interview and clarified appellant's intent not to have a lawyer "right now." In these circumstances, we find no *Miranda* violation. *United States v. Davis,* 36 MJ 337 (CMA 1993), *aff'd,* —— U.S. ——, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.