**664**

UNITED STATES, Appellee,

v.

Private E–1 Donald T. KING, 544–90–9769, United States Army, Appellant.

CM 447533.

U.S. Army Court of Military Review.

16 Nov. 1988.

For Appellant: Captain Richard J. Anderson, JAGC (argued); Colonel Brooks B. La Grua, JAGC, Colonel John T. Edwards, JAGC, Lieutenant Colonel Paul J. Luedtke, JAGC, Major Russell S. Estey, JAGC, Major Dale K. Marvin, JAGC, Captain Wayne D. Lambert, JAGC (on brief).

For Appellee: Captain Carlton L. Jackson, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Larry D. Williams, JAGC (on brief).

Amicus Curiae on Specified Issue: Colonel J.V. Witt, JAGC, Lieutenant Colonel Joe D. Miller, JAGC, Major Charles A. Cosgrove, JAGC (on brief), for U.S. Army Trial Defense Service.

Before FELDER, GILLEY, and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION AND ACTION ON PETITION FOR NEW TRIAL

FELDER, Senior Judge:

Appellant was tried by a military judge serving as a general court-martial at Fort Huachuca, Arizona. Pursuant to his pleas, he was found guilty of murder while attempting to commit rape in violation of Article 118, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 918 (1982). The military judge sentenced him to a dishonorable discharge, confinement for life, and forfeiture of all pay and allowances. Pursuant to a pretrial agreement, the convening authority approved a dishonorable discharge, confinement for fifteen years, and forfeiture of all pay and allowances.

The charge in this case arose from the death of Private (PVT) W on 22 October 1983 at Fort Huachuca, Arizona. The body was discovered on 8 November 1983. Identification of the remains was difficult because of decomposition. The government theorized during the investigation that the victim was probably strangled. However, two autopsies were inconclusive as to the cause of death. Numerous newspaper articles speculated that the victim had been raped because the body was discovered with the pants and panties pulled down to the knees and the blouse pushed above the chest. However, there was no physical evidence of rape because of the deterioration of the body.

The appellant provided the following information during the providence inquiry. On the night of 22 October 1983, he saw PVT W walking outside his barracks and ran to meet her. The two walked together in the woods for a few minutes before the appellant kissed her. Private W pulled away and began to run. The appellant ran after her and tackled her to the ground. He rolled her over, kissed her, and pushed her shirt up. She started to struggle. He then unzipped her pants and put his hands over her mouth. It was only after she stopped struggling that he realized that he had covered both her mouth and nose; PVT W was dead; appellant had suffocated her. When he realized that she was dead, he panicked and ran away, leaving her body in the wooded area where he had killed her.

Shortly after the discovery of the body, the United States Army Criminal Investigation Command (CID) began to investigate the circumstances surrounding Private W's death. At first, there were no immediate suspects. Meanwhile, the appellant and the other members of his advanced individualized training class had been reassigned. Appellant was assigned to a unit in Germany. On 5 February 1984, appellant told Specialist Four Nancy Robertson that he was going to hell for murder. Appellant had told Specialist Four Peter McManus earlier that he had killed a girl. McManus told Robertson what the appellant had said. The next day, Robertson told criminal investigators about the appellant's two statements.

Agents of the Frankfurt CID apprehended appellant and interrogated him on 7 and 8 February 1984. The interroga-

tion ended on 8 February when the appellant requested the assistance of counsel. On 9 February 1984, appellant saw for five minutes Captain (CPT) H, a trial defense counsel, assigned to the Hanau Branch of the U.S. Army Trial Defense Service (TDS). According to CPT H, he advised the appellant not to talk to anyone about the case and that if anyone wanted to question him, appellant was told to have the person contact CPT H. Captain H did not talk to appellant about the facts of the case for fear of establishing an attorney-client relationship, which would probably require him to travel to Fort Huachuca, Arizona, to represent appellant. Captain H did not talk to the CID agents investigating PVT W's death, but appellant's platoon leader told investigators that appellant had a lawyer who had advised him not to talk with them.

Appellant was not questioned again by CID investigators until 10 May 1984. On that date, he again requested counsel. Captain Scott, a trial counsel stationed in Frankfurt arranged for appellant to see CPT F, a trial defense counsel. Captain Scott informed CPT F that appellant was a suspect in a murder case. According to CPT F he talked to appellant for ten minutes, advising him to remain silent. He, however, did not discuss the facts of the case, trying purposely to avoid forming an attorney-client relationship with the appellant since it was uncertain whether or where appellant would be tried.[1]

In July 1984, the decision was made that the convening authority at Fort Huachuca would exercise jurisdiction over appellant. Two CID agents were sent to Frankfurt to return appellant to the United States. Lieutenant Colonel (LTC) T, the Deputy Staff Judge Advocate at Fort Huachuca, advised Mr. Cerase, the agent-in-charge,

that the appellant was not represented by counsel. Lieutenant Colonel T wanted Mr. Cerase to have one last opportunity to interview appellant before counsel was appointed to represent him. He told the coordinating staff judge advocate in Germany to make sure that appellant did not know the CID agents were coming to apprehend him.

On 4 August 1984, shortly after their arrival at Fort Huachuca, Mr. Cerase, knowing that appellant had been previously interrogated and earlier invoked his right to counsel, asked the appellant if he had an attorney. Appellant responded that he did not have an attorney.[2] Thereafter, the CID agent informed appellant of his Article 31, 10 U.S.C. § 831/*Miranda* rights which he waived. Appellant then executed a written statement incriminating himself in the death of PVT W. After making the statement, appellant terminated the interview. The next day when Mr. Cerase tried to continue the interview, appellant once again requested the assistance of counsel and the interview was terminated.

On 7 August 1984, appellant's company commander preferred a charge of felony murder against him. On that same date, CPT Kevin Payne was appointed to represent him.

At trial, appellant moved to dismiss the charge on the ground that he was denied a speedy trial. He also moved to suppress his statement of 4 August 1984 in which he admitted to "accidentally" killing PVT W. The military judge denied both motions.

The appellant alleges on appeal, *inter alia,* (1) that the trial defense service counsel and other government agents denied him the effective assistance of counsel through systematic refusal to provide him legal representation; (2) that his trial de-

---

1. Captain F, like CPT H, did not want to be in the position of being required to travel to Fort Huachuca for a murder trial and they were so advised by their regional defense counsel not to establish an attorney-client relationship with the appellant. The TDS amicus curiae brief asserts that there were attorney-client relationships.

2. The CID agent testified that, "I knew that he *talked to* a lawyer, but I didn't know if he *had* a

lawyer" and before interrogating him "if he *had* a lawyer, my duty was to contact that lawyer immediately." Military Rule of Evidence 305(e); *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976). However, the agent did not attempt to contact a defense counsel because he relied upon the assertions of the deputy staff judge advocate and the appellant that the latter "did not *have* a lawyer."

fense counsel was ineffective by failing to move to suppress the appellant's 4 August 1984 statement on the grounds of involuntariness; and (3) that he was denied a speedy trial. He has also petitioned this court for a new trial. This court also specified three issues.[3]

## I. PRETRIAL INEFFECTIVE ASSISTANCE OF COUNSEL

In *United States v. Tempia*, 37 C.M.R. 249 (C.M.A.1967), the Court of Military Appeals held the ruling of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), applicable to military prosecutions. In *Miranda*, the Supreme Court pointed out that during custodial interrogation "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to *the presence of an attorney*, either retained or appointed." (Emphasis added.) *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612.

In *Tempia*, when the accused requested counsel, he was allowed to talk to the base staff judge advocate, who advised him that they could not form an attorney-client relationship. He also told Tempia that he would advise him of his legal rights and explained that this was different than acting as his defense counsel, and that he did not want to hear Tempia's story. That perfunctory meeting parallels appellant's consultations with the TDS counsel on 8 February and 10 May 1984. The court held, however, that where Tempia was told counsel would not be appointed to represent him during the interrogation any subsequent statement was inadmissible. 37 C.M.R. at 257–258. In the present case,

the warning given was correct, but TDS's interpretation of appellant's right to representation was limited to consultation and apparently mechanical advice rather than total effective assistance. That interpretation of the law was erroneous. *Tempia/Miranda* grant a suspect the rights to the expert assistance of counsel and his presence at subsequent interrogations. *See also Edwards v. Arizona*, 451 U.S. 477, 485–486, 101 S.Ct. 1880, 1885–1886, 68 L.Ed.2d 378 (1980).

An accused or suspect must be able to confide in his attorney so that he can receive competent individualized advice and assistance tailored to his needs. The Court of Military Appeals has noted that, under the fifth and sixth amendments, an accused is entitled to an attorney—"not a supposedly impartial arbiter ... but a lawyer who is peculiarly and entirely the accused's own representative; who owes him total fidelity; to whom full disclosure may be safely made in a privileged atmosphere; and from whom the accused can learn with confidence a proper course of action." *United States v. Tempia*, 37 C.M.R. at 259.

Under these circumstances the performance by the TDS counsel was even more unacceptable than that of the staff judge advocate in *Tempia*, because they had the benefit of the *Tempia* decision. As the Court of Military Appeals stated twenty years ago, without an advocate during the investigatory phase, "the trial may well be over when he leaves the station house or, though innocent, his frantic concern for his own safety may lead him to so constrict himself by a series of damaging declarations that an entirely valid defense may later be set at naught." *Id.* at 259–260.

3. 

I

WHETHER THE INVOCATION OF THE RIGHT TO COUNSEL BY A SUSPECT NECESSARILY INCLUDES THE RIGHT TO APPOINTED COUNSEL PURSUANT TO THE 5TH AMENDMENT, THE 6TH AMENDMENT, THE UCMJ, OR MILITARY DUE PROCESS? *SEE UNITED STATES V. WATTENBARGER*, 21 M.J. 41 (C.M.A.1985), *CERT. DENIED* [477 U.S. 904], 106 S.CT. 3272 [91 L.Ed. 2d 563] (1986) AND MIL.R.EVID. 305(F).

II

WHETHER THERE EXISTS A CONFLICT OF INTEREST BETWEEN A TRIAL DEFENSE COUNSEL AND THE TRIAL DEFENSE SERVICE WHICH INHIBITS MEANINGFUL ADVERSARIAL TESTING OF A DECISION CONCERNING THE TIMING OF THE APPOINTMENT OF THAT COUNSEL? *SEE STRICKLAND V. WASHINGTON*, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).

III

WHETHER APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THE TRIAL OF THIS CASE?

This appellant, like the accused in *Tempia,* was entitled to "a legal advisor of his own —not one ... who cannot protect the accused with the attorney-client privilege; and to whom, as here, he cannot relate the facts as he saw them and secure competent advice as to what course to follow." *Id.* at 260.

## II. WAIVER OF THE PRETRIAL RIGHT TO COUNSEL

■ The government suggests that the appellant waived his right against self-incrimination and the right to counsel by making a statement on 4 August 1984 after having been advised of his Article 31 and *Tempia/Miranda* rights on at least three occasions and by consulting with trial defense counsel on two occasions. In our view, the relinquishment of his right to counsel on 4 August 1984 was not an intelligent waiver by appellant, but a reaction to absolute despair that resulted from the failure of his previous requests for counsel to provide meaningful representation. Appellant's platoon sergeant testified that after appellant consulted with CPT F on 10 May 1984, appellant told him CPT F said there was nothing he could do for him. After twice requesting counsel and twice being rejected as a client, and being moved from the situs of his counsel, it is understandable why appellant stated on 4 August 1988 that he did not have an attorney and did not wish to consult one.

■ Once appellant requested counsel, a subsequent valid waiver of that right could not be established by merely showing he was re-advised and responded to further custodial interrogation after consulting with counsel. Appellant was subject to reinterrogation only when he either initiated further communication with investigators or received the effective assistance of counsel. The right to counsel is a prime example of those rights requiring the special protection of the knowing and intelli-

gent waiver standard. *Edwards v. Arizona,* 451 U.S. 477, 482–485, 101 S.Ct. 1880, 1883–1885, 68 L.Ed.2d 378 (citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The government has not met its burden of showing that appellant knowingly and intelligently waived his rights to the presence of counsel at future interrogations and the adequate assistance of counsel at any time after he initially invoked it on 8 February 1984.

To the contrary, the record shows that the actions of TDS counsel, the deputy staff judge advocate at Fort Huachuca, and the CID agents, while perhaps unsuspectingly, frustrated appellant in his attempts to exercise his rights. *See United States v. Tempia,* 37 C.M.R. at 258. To hold otherwise would be to sanction the actions of TDS counsel as government agents rather than representatives of appellant. The government would have us view the consultations as sufficient evidence to show waiver, when the consultations were clearly insufficient to provide the type of effective representation envisioned by *Tempia* and *Miranda.*[4]

■ This court is not depriving appellant of his free choice to confess, but rather affording him the protections and right the constitution grants him, which he sought, without success, to exercise. We are mindful of the Supreme Court's observation in *Michigan v. Mosley,* 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), that:

[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigation activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.

4. Two of the purposes for the creation of a separate trial defense service were to protect defense counsel against actual or potential threats to their professional independence, and to improve the perception of the defense function in the Army. The actions by legal experts

in this case were not consistent with those goals and tended to bring the military justice system into disrepute. *See generally* Howell, TDS: The Establishment of the U.S. Army Trial Defense Service, 100 Mil.L.Rev. 4 (1983).

However, we find that appellant did not make an informed and intelligent assessment of his interests because of the ineffectiveness of counsel's representation when he talked to them on two previous occasions. Counsel must do more. The right to counsel at every stage of the adversary process means the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763. If the circumscribed efforts of counsel were sanctioned in this case, *United States v. Tempia*, 37 C.M.R. 249, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, would offer no protection to the military accused. Instead, they would have only the protection afforded in *United States v. Gunnels*, 23 C.M.R. 354 (C.M.A.1957), which was overruled by the Court of Military Appeals more than two decades ago. *See United States v. Tempia*, 37 C.M.R. at 259.

■ The purposeful efforts by the trial defense service to deny full representation to the appellant for interrogation purposes and the complicity of the deputy staff judge advocate at Fort Huachuca in arranging for CID agents to interview appellant while he was without counsel cannot be condoned. The military judge ruled the incriminating statement was admissible because the agent properly relied upon the assertions by the deputy staff judge advocate and appellant that the latter did not have a lawyer; and, the agent was not obliged to inform a defense counsel of his intention to reinterrogate appellant. This ruling was incorrect because appellant's request for counsel in Germany retained its viability in the United States. *United States v. Vidal*, 23 M.J. 319, 322–323 (C.M.A.1987); *United States v. Goodson*, 22 M.J. 22 (C.M.A.1986), *reversed and remanded*, 22 M.J. 947 (A.C.M.R.1986); *United States v. Harris*, 19 M.J. 331 (C.M.A.1985). The appellant was left constitu-

tionally unprotected because those in authority chose to view his right to counsel too narrowly. We hold that appellant's statement was inadmissible because his rights to notice to counsel and their presence at subsequent interrogations were offended; his waiver of those rights was not made intelligently; and the assistance he received from defense counsel in Germany was ineffective.

## III. EFFECT OF GUILTY PLEA

■ The government citing, *inter alia*, *McMann v. Richardson*, 397 U.S. 759, 767–71, 90 S.Ct. 1441, 1446–49, 25 L.Ed.2d 763 (1970), argues that any error in the pretrial representation of counsel and the subsequent erroneous admission of the statement into evidence was waived by the appellant's guilty plea. We agree with the government's argument. Military Rule of Evidence 304(d)(5) provides:

(5) *Effect of guilty plea.* Except as otherwise expressly provided in R.C.M. 910(a)(2), a plea of guilty to an offense that results in a finding of guilty waives all privileges against self-incrimination and all motions and objections under this rule with respect to that offense regardless of whether raised prior to plea.[5]

This rule restates well-settled law that a voluntary and intelligent plea of guilty on the advice of competent counsel waives an erroneous ruling on the admissibility of a pretrial confession. *See, e.g., Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *United States v. Dusenberry*, 49 C.M.R. 536 (C.M.A.1975); *United States v. Higa*, 12 M.J. 1008 (A.C.M.R.1982); *United States v. Jackson*, 7 M.J. 647 (A.C.M.R.1979); *United States v. Curry*, 15 M.J. 701 (A.C.M.R.1983) (provident guilty plea waives appellate consideration of evidentiary motions). In fact, appellate courts have refused to address the merits of the claim of constitutional depri-

---

5. Rule for Courts–Martial 910(a)(2) provides for a conditional plea of guilty to preserve appellate review of denied pretrial motions. The military judge and trial counsel must agree in writing to

the preservation of review. The appellant's pleas were not conditional regarding his pretrial statement.

vations that occurred prior to the guilty plea.[6] *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A plea of guilty usually waives nonjurisdictional errors. *United States v. Joseph*, 11 M.J. 333 (C.M.A.1981); *United States v. Lopez*, 42 C.M.R. 268 (C.M.A.1970).

The military judge conducted an extensive inquiry into appellant's plea in accordance with *United States v. Care*, 40 C.M.R. 247 (C.M.A.1969), *United States v. Green*, 1 M.J. 453 (C.M.A.1976), and *United States v. King*, 3 M.J. 458 (C.M.A.1977). While the judge did not directly advise appellant his plea would waive an earlier motion to suppress evidence, the judge did inform him "normally motions are waived by a plea of guilty" and he also received appellant's assurance that his trial defense counsel informed him of the meaning and effect of pleading guilty. Under the circumstances, the military judge's inquiry supports his findings that the guilty plea was provident.

■ An otherwise provident plea of guilty may be reversed after conviction to correct a manifest injustice. *United States v. Zieran*, 15 M.J. 511, 512 (A.C.M.R.1982), *petition denied*, 16 M.J. 125 (C.M.A.1983). However, the evidence proves the decision to plead guilty in this case was a personal one made by a fully-informed appellant and the conviction should stand. *See United States v. Stephens*, 25 M.J. 171 (C.M.A. 1987). There was a seventeen-day delay between the ruling on the suppression mo-

tion and the entry of the plea of guilty, giving appellant and his counsel ample opportunity to chart a course of action.

■ The appellant on his accord made incriminating statements to two soldiers prior to his being interviewed by government agents. During the sentencing phase of the trial, he informed the court through his counsel that he spent a year and a half trying to convince himself that he had nothing to do with the death of PVT W; he was almost successful in convincing himself that it was a bad dream; for a long time he had hoped to get off; he had confronted the truth and was prepared to accept it; his agreement to plead guilty at first was a selfish move to limit his punishment; telling the truth was probably the first smart thing he had done; and admitting guilt was a relief and had started him to feel good about himself. The appellant's statement indicates that he knowingly and intelligently chose to plead guilty to assuage his conscience and obtain the benefit of a pretrial agreement rather than contest his guilt and risk life imprisonment. *See United States v. Buswell*, 22 M.J. 617 (A.C.M.R. 1986); *United States v. Jackson*, 7 M.J. 647 (A.C.M.R.1979). There is no showing that the pretrial ineffectiveness of counsel either prejudiced appellant at trial or caused him to plead guilty.[7]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

■ Initially, appellant declined our invitation to brief the specified issue involving

---

6. In *United States v. Adams*, 21 M.J. 378 (C.M.A. 1985) (summary disposition), the court seemingly accepted a trial judge's ruling that a guilty plea waives appellate review of a "due process" issue.

7. Appellant also argues that his sixth amendment right to counsel attached when the government decided to prosecute and initiated adversary judicial proceedings. *Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed. 2d 410 (1986); *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985); *United States v. Gouveia*, 467 U.S. 180, 189–190, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984). His position is that this occurred as early as when pretrial restriction was imposed on 10 May 1984 or as late as July 1984, when the decision was made to return him to Fort Huachuca, Arizona,

to possibly face a court-martial. In any event, he asserts that counsel was guaranteed under the sixth amendment long before his statement was made on 4 August 1984 and its admissibility was not waived when this right was denied. Appellant's position differs from the longstanding rule in the military that the sixth amendment right to counsel is triggered by the preferral of charges. *United States v. Wattenbarger*, 21 M.J. 41, 43 (C.M.A.1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986); *see United States v. Adams*, 45 C.M.R. 175, 179 (C.M.A.1972); *United States v. Moore*, 16 C.M.R. 56, 60 (C.M.A.1954). Therefore, his right to representation under the sixth amendment was not abridged because it did not attach until 7 August 1984, the date the charge was preferred and trial defense counsel was appointed.

the effectiveness of the trial defense counsel in this case. Apparently, realizing that a provident guilty plea on the advice of competent counsel serves as a waiver of erroneous evidentiary rulings, appellant now contends his trial defense counsel was ineffective because he "did not move to suppress appellant's 4 August 1984 statement as the result of coercion, unlawful influence, or unlawful inducement" in violation of Article 31(d), UCMJ, 10 U.S.C. § 831(d) (1982). Appellant asserts that during the interrogations on 7 February 1984 and 4 August 1984, CID agents sought incriminating admissions from him by explaining the degrees of homicide, threatening him with the death penalty and encouraging him to admit to the accidental killing of the victim.

Appellant was represented at trial by two defense counsel, who moved to suppress his statement because appellant had been denied the pretrial effective assistance of counsel in Germany and the failure of CID agents to notify counsel prior to subsequent interrogations, after appellant had requested their assistance. Mil.R. Evid. 305(e); *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976). The motion was denied by the military judge. We have concluded the motion to suppress should have been granted for the reasons stated above.

The trial defense counsels' challenge against the admissibility of the statement was correct. Their failure to attack its admissibility on an alternate ground does not constitute ineffective assistance. The performances of both trial defense counsel were well within the standard of competence expected of them. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Jefferson*, 13 M.J. 1 (C.M.A.1982); *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977). In fact, we do not perceive the issue of voluntariness as a viable one.

## V. SPEEDY TRIAL

We find that pretrial confinement commenced on 4 August 1984, the date appellant was returned to Fort Huachuca, Arizo-

na. Accordingly, the government was accountable for 100 days of pretrial confinement. We agree with the special findings of the military judge that "Extraordinary circumstances dictated the length of time it took this case to come to trial." Under the circumstances, appellant's right to a speedy trial was not violated. *See* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707(d).

The remaining assigned errors, including the request for a new trial, have been considered and determined to be without merit.

The findings of guilty and the sentence are affirmed.

Judge GILLEY and Judge KENNETT concur.